# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**LAMAR LANDERS,**

    Petitioner,

vs.                                     **CASE NO. 4:05cv417-MP/WCS**

**JAMES McDONOUGH,**[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction after a jury trial for robbery with a deadly weapon, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number R-2001-419-AF. Petitioner was sentenced to serve 84 months in prison as an habitual offender.

Respondent filed an answer, doc. 7, and Petitioner filed a traverse, doc. 8. Respondent concedes that the petition was timely filed.

---

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is substituted as Respondent. FED. R. CIV. P. 25(d).

## Procedural History

Petitioner took a direct appeal. Exs. D and E. His conviction was affirmed without an opinion. Ex. F. Petitioner filed a Rule 3.850 motion. Ex. H. The motion was denied without an evidentiary hearing and this was affirmed on appeal. Exs. K and M.

## Trial Evidence

On the afternoon of January 8, 2001, Petitioner entered a Best Buy store. Ex. D, p. 1 (Petitioner's brief on direct appeal). Petitioner left the store with compact discs without paying for them. *Id*. As he exited the store, he was confronted by Matthew Barnes who requested that Petitioner return the merchandise. *Id*. Petitioner walked past Barnes without incident. *Id*. Barnes followed, telephoning the police as he went. *Id*., p. 2. Barnes followed Petitioner over a hill and into a breezeway. *Id*. Barnes testified that Petitioner pulled out a box cutter and said "do you want it that bad? I got something for you" *Id*. and Ex. E, p. 2 (Respondent's brief on appeal). Barnes said he saw the blade and then turned and ran, but stayed in the vicinity to watch where Petitioner went. Ex. D, p. 2. Barnes did not mention the box cutter in his telephone calls to the police or in his written statement prepared for the police. *Id*.

> More specifically, Matthew Barnes testified:
>
> This is Best Buy right here (referring to Court's Ex. 1, an aerial view of the area). And this is the front door. As he [Petitioner] proceeded to go around the side of the building, I also – I followed him. And I went into our install bay right here where I asked our install lead for his cell phone so I could just basically follow him with the cell phone and tell the police exactly where he was going.
>
> As I followed him up over this hill – it kind of slopes up right in here – I got to right about here, and he disappeared into this little breezeway. So I waited a couple of, you know, a couple of seconds, or whatever, 30

> seconds, I don't know, figuring that, you know, that he was further enough along that I could follow behind him.
>
> And as I was entering into the breezeway here is where he came around. There's a corner right here inside the breezeway. At first, he had a – it looked like – it looked like a comb in his hand. And then he produced a – like a blade, like a box cutter blade, I saw.

Ex. O, pp. 57-58. Barnes then described where he stood, next to some stairs, and he said:

> That's where I could see the – I mean, I could see him pulling out the comb. And then he pulled out something in his hand. I couldn't see it exactly until he got – he came a little bit closer, about that far. And then he pulled out the blade and said, do you want it that bad? I got something for you.

*Id.*, p. 58. Barnes said he was familiar with box cutters because he worked with them at Best Buy opening boxes. *Id.* Barnes was asked how he felt, and he said:

> That didn't really scare me at all because it's like a comb. Like, okay, it's a comb. And then he pulled out the blade. When I saw the blade, I was, okay, never mind. Have a nice day. So I basically turned around and ran.

*Id.*, p. 60. Barnes said his purpose then was not to stop Petitioner, but "just to follow him, let the police know where he was going." *Id.* Barnes said that "when he pulled it [the knife] out on me, it was to keep me away from him." *Id.*, p. 61.

On cross examination, Barnes said:

> The one he, like I said, I saw the blade itself in his hand protruding out from the top of his hand. So I could not physically tell you exactly what it looked like in his hand, but the blade itself was protruding from his hand.

*Id.*, pp. 64-65. He repeated that he was beside a stairwell. *Id.*, p. 65. He said he thought the comb was "colorful." *Id.* It was broad daylight. *Id.* Petitioner was inside the breezeway, and Barnes was just beside the breezeway. *Id.*

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard). If a claim was not fairly presented but is procedurally barred from further state court review, Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

**Ground One**

In ground one, Petitioner asserts that the probable cause affidavit submitted by Detective Karen Brown "was patently false and served to prejudice all subsequent proceedings." Petitioner contends that the evidence, including a surveillance video at the store, showed that Petitioner did not threaten the victim, Barnes, with a knife. Petitioner brings this as a due process claim.

Petitioner attached a copy of his Rule 3.850 motion to his petition, but he did not otherwise mention this motion in his petition. Respondent construed the petition as not raising the claims presented in the Rule 3.850 motion. Doc. 7, pp. 8-9. Respondent further argues that this particular claim was not raised in the trial court, on direct appeal, or in the Rule 3.850 motion, and therefore is procedurally defaulted. Respondent asks permission to file further argument if the court finds that Petitioner intended to raise claims presented in his Rule 3.850 motion.

In response, Petitioner confusingly argues that ground one was raised in the Rule 3.850 motion as a claim of ineffective assistance of counsel. Doc. 8, p. 2. Petitioner argues that his attorney was ineffective for failing to file "pretrial motions" or question Brown at trial about the probable cause affidavit. *Id.* He admits that Brown did not testify. *Id.* Petitioner argues that the facts alleged in the probable cause affidavit (that Petitioner used a box cutter against Barnes) were "aired on Crime Stoppers," and asserts that this unfairly caused the witnesses to testify that they saw a knife when in fact he did not use a knife. *Id.*, p. 3. He argues that if the video tape showed him using a knife, it "was edited to show those events when in fact they did not happen." *Id.*

In ground one of the Rule 3.850, Petitioner faulted his attorney for failing to file a motion to dismiss the information based upon the alleged falsity of the probable cause affidavit.  Doc. 1, attachment; doc. 1-2, pp. 2-3 (as numbered and paginated on the electronic docket).  Petitioner claimed in ground two in the Rule 3.850 motion that his attorney was ineffective for failing to call Detective Brown as a witness, to reveal inconsistencies between the affidavit and the trial testimony.  *Id*., pp. 3-4.

While Respondent reserved the right to file additional argument if the court construed the petition as raising any of the Rule 3.850 claims, Petitioner's claims are so clearly without merit that there is no good reason further argument or delay.  To the extent that Respondent wishes to make additional argument, Respondent may do so by filing objections to this report and recommendation.

The claim that Petitioner attempts to bring to this court concerning the Crime Stoppers program is procedurally defaulted, whether Petitioner wishes now to bring the claim directly or as a basis for a claim of ineffective assistance of counsel.  There is nothing in Petitioner's brief on direct appeal or in his Rule 3.850 motion alleging prejudicial effect of a broadcast upon his trial, or alleging any prejudicial effect of the probable cause affidavit upon that broadcast.  Exs. D and K.  Petitioner has not shown cause or prejudice for this procedural default, and the court cannot reach the merits of this aspect of ground one.

The trial court denied the first two grounds in the Rule 3.850, finding that Petitioner had failed to allege sufficient facts to support these claims or to show that the outcome would have been different. Ex. K, p. 1.  This was the application of well-established federal law.  "Conclusory allegations of ineffective assistance are

insufficient." <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, <u>United States v. Lawson</u>, 947 F.2d 849, 853 (7th Cir. 1991) (same); <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); <u>Bolder v. Armontrout</u>, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); <u>United States v. Vargas</u>, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

That still is the case. There are no specifics to support this claim of ineffective assistance of counsel. Petitioner simply argues that the facts set forth in the probable cause affidavit were inconsistent with the testimony at trial, but fails to describe the specific inconsistencies. Further, the probable cause affidavit was only a step toward the arrest and charging of Petitioner with a criminal offense. It was not evidence for the trial and it was not presented to the jury. There is no claim here that the arrest was lacking in probable cause or that, as a consequence, some evidence acquired during the arrest should have been suppressed. Detective Brown was not an eye witness, and could only have testified to her investigation, so there was no reason to call her as a witness. Petitioner has not shown how calling Brown as a witness would have been helpful in any way to his defense.

In any event, I can perceive no inconsistencies between the probable cause affidavit and the trial testimony. The probable cause affidavit, reduced to essential elements, states that Matthew Barnes was the Manager at Best Buy. Ex. J. Barnes was alerted by Toriano Evans, a Best Buy security officer, that a suspect, later identified

as Petitioner, was seen on the surveillance video picking up CDs and removing the sensors with a straight blade.  *Id*.  The suspect was seen putting the CDs in his pants and walking to the front door.  *Id*.  Barnes followed, and Petitioner pulled a straight edge blade and asked Barnes if he wanted some of that.  *Id*.  Barnes became frightened and stopped in his efforts to detain Petitioner.  *Id*.

This is exactly the trial testimony of Barnes and Evans.  Ex. O (trial transcript), pp. 42, 45-46, 49, 54-61.  Petitioner has presented no evidence that the surveillance video tape showed anything different.  Further, Petitioner admitted he was guilty of petit theft, so the only issue at trial was whether he used force to steal the CDs.  *Id.*, pp. 10-11.  For all of these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Two**

Petitioner contends that the trial evidence supported only conviction for petit theft, not armed robbery.  Petitioner contends that because Barnes continued to pursue him after he brandished the knife, Barnes could not have been in fear for his life.

This claim was not raised on direct appeal.  Ex. D.  The trial court was presented with a sufficiency of the evidence claim as ground five in Petitioner's Rule 3.850 motion and rejected it, finding that it should have been raised on direct appeal.  Ex. K, p. 2. Respondent argues that the claim is procedurally defaulted.

Whether or not the claim should have been raised on direct appeal need not be addressed by the court.[2]  The claim in ground five of the Rule 3.850 motion is not this claim.  In the Rule 3.850 motion, Petitioner argued that the evidence was insufficient because "the weight of the evidence did not support that a weapon was utilized by the Defendant."  Doc. 1, attachment; doc. 1-2, p. 5.  This is not a claim that there was no evidence that Barnes was in fear for his life.  The claim is procedurally defaulted.  *See* Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001), *cert. denied*, 535 U.S. 926 (2002):

> Insufficiency of the evidence is simply too broad and malleable an objection to hold, under these circumstances at least, that a direct appeal in state court challenging the sufficiency of the evidence on one theory is enough to preserve for federal habeas review a challenge to the adequacy of proof on a factually and legally distinct theory never fairly presented to the state courts.

256 F.3d at 1170 (claim that the evidence was insufficient to prove defendant's presence at the scene was not the same claim as sufficiency of the evidence of intent to kill).  Petitioner must show cause for his default and prejudice to the outcome.

Rather than decide this claim on procedural default, however, it is easier to deny it on the merits.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

---

[2] Sufficiency of evidence claims in Florida must be raised on direct appeal, not by means of a Rule 3.850 motion.  Young v. State, 739 So. 2d 553, 555 n. 5 (Fla. 1999).  However, in Francois v. State, 407 So. 2d 687 (Fla. 1985), the Florida Supreme Court said in *dicta* that "in the absence of fundamental error, such matters [sufficiency of the evidence and sufficiency of jury instructions] are not cognizable by collateral attack."  407 So. 2d at 689 (citations omitted).  This implies that a claim of fundamental error involving sufficiency of the evidence might be raised on a Rule 3.850 motion.  No Florida case has ever cited this dicta, however, and it is doubtful that this is Florida law.

Case No. 4:05cv417-MP/WCS

It is "an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. at 316, 99 S.Ct. at 2787, *relying on* In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The question is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis by the Court); Fallada v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987). "The *Jackson* standard, which focuses on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, if credited, could support the conviction." Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995).

Barnes testified at trial that, after Petitioner displayed the knife, Barnes "waited a considerable amount of time for him to get what I deemed far enough away. And then I followed him up to about the corner of –" Ex. O, p. 60. Barnes said he followed Petitioner until he "went around the corner, all these trees and bushes and stuff, I couldn't see him. And I wasn't going to take the risk a second time. So I basically stopped there and turned around." *Id.*, pp. 60-61.

This was sufficient to support a robbery conviction in Florida:

> A conviction for the crime of robbery requires proof that money or other property was taken from the victim and that the offender used force or violence "in the course of the taking." See § 812.13(1), Fla. Stat. (1997). The temporal relationship between the use of force and the taking of the property is addressed in section 812.13(3)(b), which provides that "[a]n act

> shall be deemed 'in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events."  As this definition reveals, the statute is not limited to situations in which the defendant has used force at the precise time the property is taken.
>
> On the contrary, section 812.13, *Florida Statutes incorporates the modern view that a robbery can be proven by evidence of force used to elude the victim or to retain the victim's property once it has been taken*.  See Wayne R. LaFave and Austin W. Scott, Jr., SUBSTANTIVE CRIMINAL LAW § 8.11(e) (1986).  The rationale for this view is that the force used in the flight after the taking of property is no different from that used to effect the taking.  As explained in the Comments to the Model Penal Code, "[t]he thief's willingness to use force against those who would restrain him in flight suggests that he would have employed force to effect the theft had the need arisen."  Model Penal Code § 222.1, comment at 104 (1980).  Based on the language of section 812.13, the Florida courts have held that the crime of robbery can be proven by evidence that the defendant used force against the victim after the taking has been completed. *See, e.g., Lemus v. State*, 641 So.2d 177 (Fla. 5th DCA 1994) (force used to resist a security guard was sufficient to support a conviction for robbery, even though the defendant used no force to take the items from the store); *Santilli v. State*, 570 So.2d 400 (Fla. 5th DCA 1990) (force used during the defendant's attempted flight from the scene of a shoplifting was sufficient to elevate the shoplifting to a robbery); *Rumph v. State*, 544 So.2d 1150 (Fla. 5th DCA 1989) (force used to shove a store clerk out of the way was sufficient to sustain a conviction for robbery).  The common feature of these cases is that in each case there was no break in the chain of events between the taking and the use of force.

Messina v. State, 728 So.2d 818, 819 (Fla. 1st DCA 1999) (emphasis added).  *See also*

Pray v. Crosby, No. 1:04cv381-MP/WCS, 2006 WL 680821, *4 (N.D. Fla. 2006).

Ground two affords no relief.


**Ground Three**

Petitioner contends that he was denied a fundamentally fair trial because the trial court created confusion when the jury asked for clarification.  Petitioner contends that the trial court's answers to the questions of the jury were inadequate.

Respondent concedes that this claim was raised on direct appeal, but argues that there was no claim of a violation of federal law.  The claim, argues Respondent, was premised upon the Florida Constitution and Florida cases.

On direct appeal, Petitioner's attorney argued that the way the trial court answered questions by the jury caused a denial of "a fair and impartial trial by jury."  Ex. D, p. 5.  On the next page, counsel referred to the Florida Constitution as the source of a fair and impartial trial.  *Id.*, p. 6.  Cited for this was Article I, §§ 9 and 16 of the Florida Constitution.  *Id.*  The gist of the argument is that the trial court erred when he failed to provide the jury with a short excerpt of the testimony of Barnes, relating what he saw when he confronted Petitioner "in the breezeway."  *Id.*, p. 9.  As will be seen, this is not what Petitioner's attorney sought during the trial, but the point is not important for disposition of the claim.

There is no difference between the Florida standard for a due process claim of denial of a fundamentally fair trial and the federal standard.  Article 9 of the Florida Constitution provides in part that "No person shall be deprived of life, liberty or property without due process of law . . . ."  Respondent has not shown how this standard is any different than the federal due process standard.  This court should reach the merits of this claim.

The jury submitted three questions during deliberations.  The first was "what happened to the CDs."  *Id.*, p. 130.  The court ruled that this question asked for

irrelevant information. *Id.* The court told the jury to rely on their memories. *Id.*, p. 131. That ruling and answer did not deprive Petitioner of a fundamentally fair trial since Petitioner admitted to stealing the compact discs.

The second question was: "Is there a copy of the transcript as it pertains to the description in the breezeway?" *Id.* The trial court said "the only thing I can think of they're asking for is a transcript of Barnes' testimony about the breezeway, about being in the breezeway. Otherwise, I don't know what this means." *Id.* Petitioner's counsel agreed that this is what the question meant. *Id.* The court decided to bring the jury in and try to find out what they wanted. *Id.*, p. 131. Juror 6 said that the jury had questions about the specifics of what Barnes had said "as he depicted what he saw in the breezeway." *Id.*, p. 132. Juror 1 said that they needed just one line. *Id.*, p. 133. Juror 6 said "what he talked about in the breezeway is all that we're interested in." *Id.* The juror qualified that by "what he said he saw." *Id.*

The court answered the first question by writing back to the jury that they must rely upon their memories of the evidence. *Id.*, p. 137. The court answered the second question by writing that more clarification of the question was needed, and that "[w]ithout more clarification, I can tell you only to rely on your individual and collective memory of the testimony of the witnesses." *Id.*

Finally, the jury submitted a third question, asking for the location where Petitioner was apprehended. The court answered this question in the same way, that the jury must rely upon its memory. *Id.*, pp. 137-138.

Petitioner's attorney argued that with respect to question two, the question about what happened at the breezeway, no further answer should be given except to rely

upon memory.  *Id.*, p. 138.  The court disagreed, and said it would give the jury one more shot at clarifying their question, but said that "[i]f they can't, that's exactly what I'll do."  *Id.*  The jury did not respond with any further clarification to this question, and returned with a verdict.  *Id.*, pp. 138-139.

Had the trial court granted the request of the jury as to the second question concerning the breezeway, the jury would have been given an excerpt of the testimony of Barnes set forth above.  There is nothing in the testimony of Barnes favorable to Petitioner.  The testimony is entirely consistent with the guilty verdict.  The jury was plainly told that it could try to clarify its question one more time, or each juror could rely upon his or her own memory.  The jury chose the latter option.  Ground three is without merit.

**Ground Four**

Petitioner argues that the evidence was insufficient to support conviction for robbery with a deadly weapon because the force used was not a continuation of the effort to steal the compact discs.  He argues that Barnes broke contact during the pursuit.

This claim was not raised on direct appeal and it was not raised in ground five of the Rule 3.850 motion.  The claim is procedurally defaulted.  But like other claims, it is easier to dispose of the claim on the merits.  It is plainly without merit for the reasons stated above.  Barnes pursued Petitioner until Petitioner threatened him with a knife.  The armed robbery was completed at that point.  Ground four is without merit.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Lamar Landers challenging his conviction for robbery with a deadly weapon in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number R-2001-419-AF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on November 17, 2006.


                         s/   William C. Sherrill, Jr.
                         **WILLIAM C. SHERRILL, JR.**
                         **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**